FILED

AUG 2 4 2023

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____ MUB _____ DEP CLK

STATEMENT OF FACTS

The Plaintiff, Jeremy Gerald, in proper person, brings this cause of action pursuant to the provisions of 42 USC §j 1983 and Pulliam v. Allen, 466 US 522 (1984) requesting this court issue an injunction or declatory judgment against the Defendants based on the following:

Ohio, with its current state of gerrymandered/bribery oriented[1] politics in control of most of, if not all of, state government positions, has taken a 'pro-police' stance to the detriment of fundamental rights of many of Ohio citizens, especially those subject to its judicial branch.

This erodes checks and balances of the state in terms of many of the line-up of rights under the Federal Bill of Rights. Some of the issues which concern the incarcerated and formerly incarcerated include, but are not limited to:

1) The lack of a state recognized mailbox rule
2) The direct and clear prohibition for the incarcerated to benefit from the state's law under the Public Records Request R.C. 149.01 et seq.
3) The creation of a procedure which allows defense counsel to withhold disclosure of Discovery to a defendant and label it 'Counsel only'.
4) The persistence of law enforcement to redundantly charge a defendant duplicitously in spite of a statute against 'shotgun offenses/convictions'
5) The lack of a state constitutional counterpart to the 14th. Amendment to the U.S. Constitution making discrimination rampant and Due Process a scarcity.

---

[1] In the years between 2018-2022 citizens of Ohio protested gerrymandered politics of the state to the point where Ohio created a board to review the district maps and to create a map inoffensive to the 14th and 15th Amendments of the U.S. Constitution. In 2019 Ohio's then Speaker of the House was involved in an investigation by the FBI concerning bribery of Ohio State House votes.

From these and other acts of Ohio state government officials, the Plaintiff has experienced a tormentous, torturous journey through Ohio's Justice System just for having the audacity to travel on the public roads of Ohio as a black man, in a predominantly white neighborhood (Peninsula, OH) and refuse to comply with a racist traffic stop; refuse to cooperate with an investigation by not only asking for his lawyer but in response to police questioning "Why aren't there any black officers in your police department?"; refusing to waive his preliminary hearing after counsel attempts to "encourage/trick" his client to waive it because if he did, the state would 'provide discovery faster' when the preliminary hearing is the first opportunity for the defense to challenge the sufficiency of probable cause for an arrest; proceeding as his own representation when his counsel refused to cross-examine the state's witness; and the list can go on all the way down to taking the case to trial as his own counsel.

Some particular events which concern the acts of the Defendant Tammy O'Brien which deserve mentioning, begin with a Faretta hearing held on January 8, 2016. At this hearing O'Brien asked the basic questions concerning court procedure. O'Brien presented a form listing the charges and the potential sentence. What is notably missing which deserves highlighting here is the lack of any mention of if the sentences could be possibly merged and the sentence if the sentences merged. Also notably absent from the form was any possibility of a period of P.R.C. supervision upon release[1]. See Attachment Waiver.

After having been held in Summit County Jail for the charges issued by Peninsula Police Department, the Plaintiff Gerald began experiencing some conditions which, after a month, he felt the need to bring to the attention of O'Brien. On January 21, 2016 Gerald filed a motion titled "Motion In Re Jail Conditions".

---

[1]This particular absence is the pivotal issue of this action as well as the law in Ohio which concerns P.R.C. 2967.28 Ohio Revised Code. The mention of all other matters is just to point out how Ohio authorities employ a "do what I want" approach to much of its citizenry as well as the Plaintiff Gerald even if violative of the U.S. Constitution which causes the need for federal intervention.

The motion addressed:

1. Faulty, insufficient writing materials, envelopes and copying services.
2. Access to Islamic services, materials and meals.
3. Faulty and insufficient access to legal research.
4. 2000 calories (the lack of) of food per day.
5. A reviewable disciplinary process.
6. Unreasonable force.
7. A regular meal if in disciplinary confinement and not a nutri-loaf for punishment.
8. Proper air circulation in housing area and climate control.
9. Sufficient recreation space.
10. 14 hours per day lock-down status.
11. Ability to use collect or non-collect phone

O'Brien in her reply to the motion stated that all of the issues presented besides writing supplies were dismissed as not proper before her court.

However, in an updated version of the Summit County Jail rules (updated from the date of the motion's date of filing), which were updated later that year addressing most, if not all of the issues complained of in the motion but did not correct them, O'Brien and all other judges of Summit County signed the rules of Summit County Jail (SCJ).

Not getting any relief in state court, Gerald attempts to bring some of the issues to this court (U.S. District Court) Mitchel et al. v. Barry, et al., 5:16-cv-288. See Docket. The jail staff had such an interest in the legal failure of Gerald that the jail staff interrupted mail delivery of the notice from the District Court. That action is dismissed and not timely appealed due to the unawareness of any action taken by the court.

Two other motions filed at the time of January 21, 2016 significant were Motions to Dismiss the Indictment and Motion to Suppress Evidence.

As these motions were significant to the state's attorney, he offered Gerald his first plea deal prior to (just minutes before) the hearing on these motions and stated that the plea was off the table if Gerald proceeded with the hearing (note: the prosecutor made the plea offer

a matter of the record in open court on trial day which there is no diminished privilege by disclosing it here). The plea offer was the dismissal of an assault charge (the one charge which took the amount of Gerald's bond amount from $5,000 to $500,000), and the dismissal of a receiving stolen property charge to plea to one count of failure to comply and three counts receiving stolen property, and a sentence of two years.

Feeling like he was being bullied into a plea with the jail conditions, Gerald refused the plea offer. He proceeded with the hearing as well. Considering the plea offer Gerald files, orally, a motion for bond reduction on May 2, 2016. This motion is denied by O'Brien.

In an effort to get some relief from the tortuous conditions of SCJ and since he had not heard from the U.S. District Court, Gerald attempts to file a Petition for Writ of Mandamus in the Summit County Court of Common Pleas as a new action. The court clerk, however, files the Petition erroneously on the Docket of Gerald's criminal case. This is unknown to Gerald and nothing more is heard of the Petition. Gerald discovers the erroneous filing nearly two years later when the state files its traverse to the Federal Writ of Habeas Corpus Petition filed in Federal Court.

Seeing no relief from the torture of SCJ and refusing to accepting a plea in a torture like condition Gerald sought to proceed with trial unprepared.

Trial proceeded on August 1, 2016 and lasted three days. Gerald was found not guilty on the count of assault and one count of receiving stolen property. Gerald was found guilty on all remaining charges. Gerald was sentenced to six and a half years. Gerald did not argue for merger or P.R.C. dismissal as he was not made aware of merger or P.R.C. laws or given notice at his Faretta hearing.

Trial court (a different judge than O'Brien) issued a lawyer to represent Gerald on appeal. Upon visiting Gerald and not accepting the appeal strategy Gerald wanted to pursue, appellate counsel litigated to be removed from the appeal. This was done without Gerald's knowledge. Although O'Brien granted the counsel's request on September 2, 2016, no notice was provided to Gerald.

Predicting that appellate counsel would sabotage the appeal by his disgruntled posture at the visit, Gerald prepared a notice of appeal on his own and placed it in the mail within the 30 day time period. Summit County Clerk refused to timely file the notice of appeal and the initial direct appeal was denied for lack of jurisdiction.

If not for his Post-Conviction Relief, the first time Gerald argued to have his sentence changed was on July 21, 2017 when he filed a Motion for Resentencing. That motion addressed merger due to allied offenses which would have made Gerald's sentence 3 years instead of 6 ½ (three counts were made consecutive). This motion was denied.

Another issue which concerns the incarcerated or those who represent themselves in Ohio state courts is the lack of latitude granted under the 6th and 14th amendments of the U.S. Constitution. The state of Ohio requires that pro se litigants "know the law" and gives no consideration to the fact that a pro se litigant most likely is not a licensed attorney. Based upon this interpretation of the 6th and 14th Amendments, howbeit erroneous, caused the appeal to the Motion for Resentencing to fail and many other appeal attempts to fail on "procedural grounds".

On November 24, 2020 Gerald attempted again to have his sentence modified from 6 ½ years to 3 years by filing a 'Motion to Vacate or Modify Void Sentence or Alternatively Judicial Release'. This motion was filed by the clerk on January 19, 2021. This motion highlights O'Brien's reasoning through the denial of a motion to sever where she states:

> "Crim.R.8(a) provides for joinder
> Of offenses as follows:
>
> Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offenses charged, whether felonies or misdemeanors, or both; are of the same or similar act or transaction, connected together or constituting part of a common scheme or plan, or

>   are part of a course of criminal
>   conduct."
>
>   "Ohio law favors joining multiple
>   Offenses in a similar trial under
>   Crim.R. 8(a) if the offenses
>   charged are of the same or similar
>   conduct."

Gerald highlighted the prior ruling by O'Brien which concerned Gerald's request for severance of offenses as it supports Gerald's point/motion to modify the sentence through merger. Ohio's merger code is under 2941.25 R.C.

Another point addressed in Gerald's Motion to Vacate was Ohio's "multiple sentences code" which is 2929.14©(4). This code is specific to the issues of consecutive sentences. There are three specific criteria which the code requires for the offenses to be given consecutive sentences. They are listed under subsection (a), (b) and (c). Gerald's circumstances did not qualify him for consecutive sentences under this code.

Gerald further requests the sentence be modified based upon the vagueness of H.B. 86 under which he was sentenced. The factors presented were:

1. The contrast difference in release options of federal inmates due to COvid-19 for compassionate release but no comparable mechanism for release on the state level for state inmates although conditions were the same.

2. Recent exposure of corruption in legislative government (The acts of Larry Householder, former house speaker and First Energy - a Akron, OH company) indicating bribery and the influence of money in the law making process, compared to the money made in the industry of prisons.

3. The history of "Kangaroo Courts" and how the definition still bears Ohio's name.

O'Brien still refused to modify Gerald's sentence. In fact O'Brien did not address the sentence portion of the motion and gave no analysis thereon. O'Brien addressed only the Judicial Release portion of the motion which she denied.

Due to there being no mailbox rule for Ohio, a notice of appeal presented January 27, 2021 was not filed until March 1, 2021 by the court clerk, which was outside of the 30-day period for jurisdiction.

To add insult to injury, O'Brien a few months later issues a nunc-pro-tunc order modifying Gerald's sentence to require him to complete a period of P.R.C. upon release[1]. This order was entered on September 10, 2021. Gerald was not provided with a copy of the order but indication of it was noted by ODRC (Ohio Department of Rehabilitation and Corrections) staff on the institution's computer system (kiosk) accessible by Gerald.

Be it noted that throughout the years of serving the 6 ½ year sentence Gerald has filed numerous actions and appeals concerning his sentence. The same "bullying" conditions experienced by Gerald in the county jail extended to the state correctional system and most of the intimidation tactics were centered around the efforts of Gerald to study (law library) and the filings of Gerald in Ohio courts.

The nunc-pro-tunc order appears to be in response to ODRC's attempt to find another intimidation tactic since Gerald had pursued protective custody status. On June 30, 2021, three months after Gerald pursued protective custody, the Defendant Ohio Adult Parole Authority issues a notice (received two months later) that Gerald was required to complete 3 years of P.R.C. upon his release.

Ohio's P.R.C. law is codified under 2967.28 R.C. Under section (B) there are four categories specified to qualify for P.R.C. 1) a sex offense; 2) a first degree offense; 3) a second degree offense; and 4) a violent third degree offense.

None of the offenses that Gerald was sentenced for (failure to comply, receiving stolen property) fit under P.R.C.'s code. Neither are any of the offenses Gerald is charged with defined as an offense of violence under 2901.01(A)(9) R.C.

---

[1] State law clearly states that any modification to a sentence in terms of P.R.C. has to be done in open court, before the Defendant and not by nunc-pro-tunc. Crim.R.43.

RELIEF

1. That an order be issued directing the Defendants to remove the warrant issued against the Plaintiff.

2. That the Defendant pay all costs associated with this action.

3. That the State of Ohio be directed to revise its interpretation of the rights of a pro se litigant to be consistent with the 6th and 14th Amendments of the U.S. Constitution.

August 20, 2023

*[Signature]*

Gerald was released to a halfway house under the state's TC program on November 11, 2021. Days prior to his release to TC he received a form from the Defendant Ohio Adult Parole Authority indicating a period of 3 years P.R.C. supervision. Upon reaching the halfway house Gerald was presented with several documents to sign. One such document pertained to the waiver of his rights against extradition if the state sought to have him brought back to Ohio upon the flight of Gerald to another state. Gerald signed this form in agreement and made a note by his signature specifying the exception that his waiver was effective up until the day of his official release of May 5, 2021 irrespective of any 'P.R.C. time'.

Gerald's sentence ended on May 5, 2021 and on such date Gerald left the state of Ohio and returned to his state of origin, North Carolina. Since being in North Carolina Gerald has held steady employment, has obtained his own vehicle and has obtained his own residence. Gerald has sorted out issues with his license and is currently pursuing a CDL license which would cause concern as the Defendant Ohio Adult Parole Authority has caused a warrant to be issued for Gerald. Having been stopped in North Carolina and having discovered that a warrant in Ohio exists but extradition was not sought, it is obvious if Gerald was driving a truck in Ohio and was stopped that he would be arrested.

Gerald is not disputing the existence of a warrant, he is only disputing the underlying process which lead to the warrant which runs afoul of the 14th Amendment's prohibition against unequal application of law.